CANNELLA, Judge.
In a suit for damages arising from a multi-vehicle accident, appellants, Herbert Kenison and Richard H. Lacoste, appeal from a Judgment of Involuntary Dismissal in favor of the State of Louisiana, Department of Public Safety, Office of State Police (State Police) and the City of Kenner (Kenner) and from a Judgment dismissing their cases in favor of the State of Louisiana, Department of Transportation and Development (DOTD). We affirm, amend and as amended, affirm.
On the morning of January 12, 1982, between 6:15 and 6:30 a.m., Kenison and Lacoste, traveling in a westerly direction, were involved in an automobile accident at the top of the Loyola Drive overpass of the Interstate 10 in Kenner, Louisiana. La-coste collided with Kenison’s car, which, suddenly and without warning, had spun out of control. The two automobiles came to rest near the shoulder of the overpass and the two men exited their cars to observe the damage. Neither man was injured in the collision. Kenison did not have his radio on nor did he check the weather forecast. Kenison had his windshield wipers on prior to the accident and observed a slight mist, but he did not observe any ice or sleet on the surface of the road as he approached the Loyola overpass. After he got out of his car, Kenison did not observe any ice except on the side of the roadway *141 and did not observe any sleet or accumulation of ice on his windshield.
Lacoste testified that it was not raining, foggy or sleeting at the time of the accident, although it was very cold, and that he did not have the windshield wipers on when the accident occurred. He stated he did not read the paper or listen to the TV or radio prior to leaving his home on the West Bank. He crossed the Greater New Orleans Bridge and entered the I — 10 driving to the Loyola Drive Overpass. He traveled at 25-30 miles per hour because the weather conditions were not good. When he reached the top of the overpass, he observed Kenison’s car spinning out of control and the vehicles collided. He did not lose control of his vehicle prior to the impact with the Kenison vehicle.
Within 90 seconds after exiting their cars, both men noticed a truck, out of control, sliding and skidding toward them. Out of fear for their lives, they jumped from the overpass and were injured in the fall. Kenison was unconscious after his fall and awoke to icy precipitation on his face.
As a result of the accident, suit was filed by appellants, Kenison and Lacoste, as well as by Standard Supply & Hardware Co., Inc. (Standard), Lacoste’s employer and owner of the vehicle Lacoste was driving, against numerous parties, alleging icy conditions as the cause of the accident. La-coste also filed suit against Kenison. The three suits were consolidated and, at the time of trial on March 11 and 12, 1991, the only remaining parties were Kenison, La-coste and Standard against the State Police, Kenner and DOTD and Lacoste against Kenison.
When the three plaintiffs rested, the trial judge granted motions of involuntary dismissal, rendered on March 12, 1991 and signed on April 3, 1991, by the State Police and Kenner against Kenison, Lacoste and Standard. Following the conclusion of trial, the trial judge rendered judgment, dated April 17, 1991, in favor of DOTD, against Kenison, Lacoste and Standard. Only Ken-ison and Lacoste appeal the judgments rendered against them and in favor of the State Police, Kenner and DOTD. Standard did not appeal nor did Lacoste appeal its case against Kenison.
Nash Roberts, III, testified for appellants as an expert meteorologist concerning the weather conditions at the time of the accident. A major Arctic outbreak occurred on January 10, 1982, causing record low temperatures, below freezing, on January 10 and January 11, 1982. No precipitation was noted in the area between 3:00 a.m. on January 8th, 1982 until the time of the accident. Early in the morning of January 12, the temperature began to rise and at approximately 4:00 o’clock a.m., the temperature was 35 degrees. Light precipitation (.01 of an inch) was noted by the weather station at New Orleans International Airport, not far from the accident location, around 6:27 a.m. Thereafter, the temperature gradually rose and after 7:00 o’clock a.m., the rain increased and continued throughout the day. There was conflicting data concerning freezing rain in the vicinity of the airport. One observation recorded freezing rain at 7:00 a.m. on January 12 and another recorded rain, but not freezing rain. Only a light amount of precipitation was reported at the airport between 6:27 and 7:00 a.m. and no ice pellets were reported. There was only a possibility of freezing precipitation in the area for a short period of about one hour, but the conditions at 6:15 to 6:30 a.m. were classically propitious for ice on higher elevation roadways and bridges. Icy conditions were unusual for this part of Louisiana as opposed to areas north of Lake Pontchartrain and Mr. Roberts records did not indicate any conditions which would lead to icing of bridges in the Greater New Orleans area at any time substantially prior to 6:20 to 6:30 a.m. on January 12. He had not revised his forecast for January 12, 1982 and did not have any information as to what his forecast had been for that date. Consequently, he could not testify whether the forecast included the possibility of freezing rain. Therefore, Mr. Roberts could not substantiate the probability of icing on bridges in the metropolitan area prior to 6:30 a.m. on January 12, 1982. Two areas, one in La-Place and the Judge Seeber Bridge in East *142 New Orleans developed icy conditions before this accident on the same morning.
Robert Roth, District Maintenance Engineer for DOTD for the District encompassing the I — 10 Loyola Drive Overpass, testified concerning the practice of DOTD of sanding bridges when DOTD is notified of icing in the area involved herein. When District 02 is aware of a prediction of icy conditions, the parish maintenance personnel are alerted that the possibility of icing exists and that they may be called to work after hours to prepare. Sand and lightweight aggregate are loaded onto dump trucks in anticipation of their need. When notification of icing is received, the superintendent is dispatched to survey the roads to determine their condition and the need for treatment. Personnel assigned to dump trucks are called to work to sand the bridges or overpasses that have begun to ice. DOTD only sands bridges and overpasses which are already icy, since sand put on a bridge without ice would actually reduce traction, blow away or be destroyed. Generally, the 1-10 in Jefferson Parish is not among the first areas to develop ice. It is more common for the higher bridges to ice sooner than the lower bridges. DOTD would usually not send anyone to inspect the bridges and overpasses of I — 10 in Jefferson Parish when notice is received of icing on the Three Mile Bridge in LaPlace, since the area west of the Spillway and north of the Lake report ice much earlier than areas on the New Orleans side of the Lake. The Three Mile Bridge is approximately 16 miles from the Loyola overpass. It is common for icing to occur north and west of the Lake and for the New Orleans area not to develop icy conditions at all. DOTD districts do not necessarily notify contiguous districts of icing on roadways in their areas. In fact, the Loyola overpass district did not receive any notice of icing in the greater New Orleans area prior to the collision.
On appeal, appellants assert five errors. First, the trial judge erred by involuntarily dismissing the State Police and Kenner, without any evidence as to their responsibility for the roadways, while keeping the DOTD in the case. Second, the trial judge erred in refusing to admit copies of the Times-Picayune newspaper of January 12, 1982, showing the prediction of ice and snow, in order to prove “notice”. Third through fifth, the trial judge erred in ignoring appellant’s expert on constructive and actual knowledge, by finding that DOTD’s witness exculpated it from liability and by ignoring that DOTD knew 27 hours prior to the incident that freezing conditions were occurring on a local bridge east of this location.
To recover in a highway maintenance case under the theory of negligence, appellants must prove that the conduct complained-of was a cause in-fact of the accident; that appellees had a duty to protect the appellants against the harm complained of; that appellees breached that duty; and that appellants were harmed by that breach of duty, Roberson v. State Through DOTD, 550 So.2d 891 (La.App. 2 Cir.1989), writ denied, 552 So.2d 387 (La.1989). The State owes a duty to the motor ing public to maintain highways in reasonably safe condition and to remedy conditions which create an unreasonable risk of injury, Roberson v. State Through DOTD, supra., McKinnie v. Dept, of Transp. & Development, 426 So.2d 344 (La.App. 2nd Cir.1983), writ denied 432 So.2d 266 (La.1983). However, before the State may be held liable for an accident caused by a hazardous or dangerous condition, it must be shown that it had actual or constructive knowledge of the condition and that it had a sufficient opportunity to remedy the situation or at least warn motorists of its pres ence and failed to do so. U.S.F. & G. Co. v. State Dept. of Highways, 339 So.2d 780 (La.1976); Naylor v. La. Dept. of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1983), writ denied, 427 So.2d 439 (La.1983) and 429 So.2d 127,134 (La.1983), McKinnie v. Dept. of Transp. & Development, supra; Roberson v. State Through DOTD, supra. These principles apply to a city as well as the state. See: Garrett v. City of Baton Rouge, 521 So.2d 638 (La.App. 1st Cir.1988), writ denied, 523 So.2d 235 (La.1988) and Duckworth v. Government Employees *143 Ins. Co., 464 So.2d 907 (La.App. 4th Cir.1985).
Neither the state nor a city is an absolute insurer against all injuries which occur on public roads. U.S.F. & G. Co. v. State Dept. of Highways, supra; McKinnie v. Dept. of Transp. & Development, supra; Garrett v. City of Baton Rouge, supra. Furthermore, the public body is not required to take action to alleviate icy conditions on bridges or roads or to warn of such conditions, unless those conditions were reasonably expected at the particular time and there was sufficient notice to take the necessary steps to alleviate the condition or to warn motorists. McKinnie v. Dept. of Transp. & Development, supra. In Moraus v. State, through Dept. of Transp., 396 So.2d 596 (La.App. 3rd Cir.1981), icing on bridges was expected overnight and the state failed to take precautions or warn motorists when the state employees had ample time and instruction by a supervisor to display “Ice on Bridge” signs prior to accident. However, if the evidence shows the department did not have sufficient time between the icing and the accident, no liability can attach. See: Roberson v. State Through DOTD, supra; Nix v. Brasly, 489 So.2d 1038 (La.App. 1st Cir.1986) and Coleman v. Houp, 319 So.2d 831 (La.App. 3rd Cir.1975). Unreceived weather reports do not constitute constructive notice of icy conditions nor is the state expected to constantly monitor the teletype for weather service statements. Roberson v. State Through DOTD, supra. The State is not required to sand or salt bridges in anticipation of icy conditions. Nix v. Brasly, supra.
The substance of appellants arguments in errors one, three, four and five is that the evidence did not support a judgment in favor of appellees. In this regard, the trial judge found, as a factual matter, that a narrow window of time, at best approximately an hour, existed for the icy conditions to crop up and that the accident, more likely than not, occurred at the time the ice developed. He found that the ap-pellees did not have time to react to prevent this accident and that icing on the Judge Seeber Bridge and the LaPlace elevated roadway was too distant in time and place to constitute actual or constructive knowledge of the hazard.
Factual findings of the trial court may not be disturbed by the appellate court in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After our review, we do not find the trial judge was clearly wrong in his factual findings. As such, those facts, applied to the legal principles governing this case, mandate our conclusion that the trial judge did not err in finding in favor of appellees.
In regard to appellants second specification of error, that the trial judge should have allowed the admission of the Times-Picayune newspaper weather forecast, the DOTD supervisor stated that he did not rely on newspaper forecasts. Under the existing jurisprudence, unreceived weather reports do not constitute constructive notice of icy conditions. See: Roberson v. State, Through DOTD, supra and Nix v. Brasly, supra. Consequently, we find no error in the trial judge’s ruling in this regard.
Finally, our review of the judgment dated April 17, 1991 reveals that the trial judge dismissed the case of Kenison v. Lacoste in addition to dismissing the suit by the appellants against DOTD. In the judgment he states:
"The case of Kenison v. Lacoste is likewise dismissed. There being shown (sic) of the part of Lacoste. All costs of that case to be borne by Kenison.”
The record does not contain a petition by Kenison against Lacoste, but it does include the consolidated case of Lacoste v. Kenison. As a result, we must amend the judgment to include a disposition of the Lacoste v. Kenison action. In this regard, we find in favor of Kenison, there being no negligence on the part of either Kenison or Lacoste shown in the trial of this matter.
Accordingly, the judgment of the trial court dated April 17, 1991 is hereby amended and as amended, affirmed, by adding the following:
*144 IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of defendant, Herbert J. Kenison, and against plaintiff, Richard H. Lacoste, dismissing the claim of Lacoste against Kenison, with prejudice, with Lacoste to pay all court costs.
Finally, the Judgment Of Involuntary Dismissal granted in favor of the State of Louisiana, Department of Public Safety, Office of State Police and the City of Ken-ner and against Kenison and Lacoste is hereby affirmed. Also, the Judgment granted in favor of the State of Louisiana, Department of Transportation and Development and against Kenison and Lacoste, is hereby affirmed.
All parties shall bear their own costs of appeal in these consolidated cases.
AFFIRMED, AMENDED AND AS AMENDED, AFFIRMED.